UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATIE ROGERS and MARY WATKINS, individually
and on behalf of all others similarly situated,

          Plaintiffs,

vs.

COMCAST CORPORATION,
a Pennsylvania corporation,

          Defendant,

Case No.
Hon.

**PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND**

MACUGA, LIDDLE, & DUBIN, P.C.
Peter W. Macuga, II (P28114)
Laura L. Sheets (P63270)
Attorneys for Plaintiff
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015

## CLASS ACTION COMPLAINT AND JURY DEMAND

NOW COMES Katie Rogers and Mary Watkins, individually and on behalf of all others similarly situated, by and through their attorneys, Macuga, Liddle, & Dubin, P.C., Peter W. Macuga, II and say as their Class Action Complaint against Comcast, Inc., ("the Defendant"), states as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action on their own behalf individually and on behalf of all individuals wherever located who purchase premium and/or digital cable services from Defendant in Michigan.

2. Plaintiffs have no choice but to pay a rental fee for a "cable box" or "set-top box" in order to view premium cable for which they pay a separate fee. Defendant's actions constitute an unlawful tying arrangement resulting in an impermissible restraint of trade, in violation of both state and federal law.

3. The activities of Defendant have and will continue to threaten to have substantial adverse competitive effects upon both interstate commerce and upon commerce within the State of Michigan.

4. Plaintiffs allege that Defendant Comcast, and its officers and owners, conspired to violate the Sherman Anti-Trust Act (15 USC §1, *et* seq), and the Michigan Consumer Protection Act (MCL §445.901, *et seq.*), by purposefully creating an unlawful tying arrangement resulting in an impermissible restraint of trade in the sale of premium and/or digital cable services to individuals across the State of Michigan.

### PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Katie Rogers is an individual and resident of the State of Michigan residing at 5046 Joseph Campau, Detroit, 48211.

6. Katie Rogers is a purchaser/subscriber of digital cable services provided by Defendant and is forced to rent a set-top box from Defendant in order to fully view those cable services.

7. Plaintiff Mary Watkins is an individual and resident of the State of Michigan residing at 4386 Conner St., Apt. 514, Detroit, 48215.

8. Mary Watkins is a purchaser/subscriber of digital cable services provided by Defendant and is forced to rent a set-top box from Defendant in order to fully view those cable services.

9. All Plaintiffs are purchasers/subscribers of premium and/or digital cable television services provided by Defendant and are forced to rent a set-top box from Defendant, and are thus a member of the Class defined herein.

10. Plaintiffs bring this class action on behalf of themselves and on behalf of the all persons who subscribed to Comcast for premium and/or digital cable television services and subscribe or paid/pay a monthly rental fee for an accompanying set-top box.

11. Excluded from the Class are Comcast; officers, directors or employees of Comcast; any entity in which Comcast has a controlling interest; the affiliates, legal representatives, attorneys, heirs, or assigns of Comcast; any federal, state or local governmental entity, and any judge, justice, or judicial office presiding over this matter and the members of their immediate families and judicial staff.

12. Defendant Comcast Corporation is, and at all times relevant hereto was, a publicly-held Pennsylvania corporation with its principal place of business located at One Comcast Center, Philadelphia, Pennsylvania, and doing business in, Michigan.

13. Defendant Comcast is a Corporation in good standing with various subsidiaries and predecessors that develop, manage, and operate cable systems in Michigan.

14. Defendant has a registered office at 30600 Telegraph Road Suite 2345, Bingham Farms, Mi 48025. Defendant has carried on continuous and systematic parts of its general business within the state of Michigan.

15. There are issues of Federal Question, and this court has jurisdiction pursuant to 23 U.S.C. §1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a). *See Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004).

16. Venue is proper in this Court under 28 U.S.C. §1391 because a significant portion of events, acts, and omissions giving rise to this action occurred in the State of Michigan in this District and because Comcast can be found in this District.

17. At all times herein mentioned, Defendant acted through its agents, servants and employees who, at all times herein mentioned, acted within the course and scope of their agency and employment with Defendant.

## **FACTUAL ALLEGATIONS**

18. Defendant is the largest cable operator in Michigan and the United States, and offers a variety of entertainment and communications products and services throughout Michigan and the United States.

19. Defendant provides cable-based services, including cable television, high-speed internet, and telephone, to customers in 39 states and the District of Columbia.

20. Defendant was incorporated under the laws of Pennsylvania in 2001. Through itself and its predecessors and subsidiaries, Defendant has developed, managed, and operated cable systems since 1963.

21. Customers that subscribe to Defendant's premium and/or digital cable services pay a monthly fee for cable.

22. Members of the Class elect to receive premium and/or digital channels such as HBO, Showtime, and other specialty channels.

23. In addition to paying a fee for cable, customers that pay for premium and/or digital channels must also pay a rental fee to Defendant for a set-top box. The set-top box consists of a converter box and cable descrambler. On information and belief, the set-top box is required for the Class to view the premium and/or digital channels.

24. Defendant requires Class members to rent a cable box directly from it and no other source, even though cable boxes are available on the open market that would readily permit Class members to view the premium and/or digital channels offered by Defendant. Thus, Defendant ties its premium channel cable service with the cable box that it requires Class members to rent. Noteworthy is that the premium and/or digital channel cable service and the cable box are separate and distinct products.

25. Although cable boxes are manufactured by numerous entities, upon information and belief, the market is dominated by Scientific Atlanta and Motorola, companies that provide cable boxes to Defendant. If not for the tying of products, the Plaintiff Class could purchase a cable box from a manufacturer of their choice and use it to view the premium cable channels that Plaintiff Class already pays Defendant.

26. Plaintiffs are not afforded the opportunity to purchase a cable box on their own due to Defendant's practice of tying its premium channel cable service with the cable box.

27. Defendant, by its conduct, coerces Plaintiff Class to pay a significantly larger sum of money that would be required if the premium cable and cable box were not tied

by Defendant. In a matter of months, the rental fees that the Class is forced to pay for the cable boxes supplied by Defendant greatly exceed the worth of the cable box.

28. Defendant is simply purchasing cable boxes at a fixed and relatively low cost from certain manufacturers, such as Scientific Atlanta and Motorola, only to turn around and rent the very same boxes to the Class, with full knowledge that the Class, as a result of Defendant's improper conduct, has no choice but to pay the rental fees charged by Comcast. Upon information and belief, the market for cable boxes involves a significant and not insubstantial amount of interstate commerce.

29. The improprieties of tying cable service to rental of a cable box has been investigated by the Federal Communications Commission ("FCC"), which has long recognized the lack of competition in the cable industry, resulting from monopolistic actions of cable companies. As such, the FCC adopted a regulation requiring the cable industry to separate the descrambling and other security capabilities of a cable box and place the capabilities in a separate device which is called a CableCARD.

30. A CableCard is a credit card-sized device which performs the same "security" and "descrambling" functions provided by the set-top cable boxes. Defendant and all other cable providers are required by FCC rules to make CableCard devices available to consumers.

31. Despite the FCC rules and related pronouncements, Defendant still promotes the set-top box as superior to the CableCard. Furthermore, Defendant informs its customers that they will need a set-top box to enjoy the full range of interactive services that the customer is already paying a separate fee for.

32. In addition to all of these representations, in the event that the customers elect to use the CableCard device, they must lease that device from Comcast (just as they are required to if they elect to use the set-top box).

33. Defendant's actions allow it to unfairly utilize its market power/economic power and/or monopoly in the Michigan market, thereby harming members of the class. All of the acts and activities of Defendant, as heretofore set out, were performed willfully, intentionally, maliciously, and knowingly.

## CLASS ACTION ALLEGATIONS

34. Defendant has a monopoly in areas in which it provides cable television services to persons located in the State of Michigan, or otherwise has sufficient market power to appreciably restrain free competition.

35. Plaintiffs advance this class action on behalf of themselves and all others similarly situated who pay for premium digital cable services and are required to also rent a set-top box from Defendants, as members of the putative Plaintiff Class.

36. This action is brought and may be maintained as a Class Action pursuant to Fed. R. Civ. P. 23(b)(3), and case related law.

37. The requirements of Rule 23, including numerosity, typicality, adequacy, predominance and/or superiority, are satisfied.

38. The Class consists of numerous individuals throughout the State of Michigan. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is not presently known to Plaintiffs, but can readily be determined by appropriate discovery, which will include Defendant's sales and other records. It is believed that the number of Plaintiffs that pay for premium

and/or digital cable and rent set-top boxes from Defendant in Michigan numbers in the thousands.

39. Plaintiffs' claims are typical of the claim of all members of the Class because Plaintiffs, like every other member of the Class, have been and continue to be exposed to Defendant's conduct and practices, and are consumers with the same legal rights at stake, and seeks the same relief under the same causes of action as the other members of the class.

40. Plaintiffs will fairly and accurately protect the interests of the members of the Class and have retained competent and experienced counsel. Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by many individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to individually seek redress for the wrongful conduct alleged herein.

42. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal and factual questions include, among other things:

    a. Whether Defendant is liable to Plaintiff Class for violations of federal antitrust laws;

    b. Whether Defendant has established illegal tying arrangements for the rental of cable boxes, in violation of federal and state law;

    c. Whether Defendant's actions caused injury to Plaintiff Class and whether Defendant should be enjoined from further violations;

    d. Whether Defendant is liable to Plaintiff Class for treble damages for its violation of federal antitrust laws; and

    e. Whether Defendant has violated the Michigan Consumer Protection Act.

43. Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

**COUNT I**

**Class Action By All Plaintiffs Against Defendant For
<u>Violations Of The Sherman Anti-Trust Act – Unlawful Tying.</u>**

Come now Plaintiffs, on behalf of themselves and on behalf of all others similarly situated and for Count I of their Petition for Damages, state:

44. Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

45. Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. §1, makes it unlawful to enter into a contract in restraint of trade or commerce. Congress has granted a private right of action to those injured in violation of this provision.

46. Plaintiffs, on behalf of themselves and the Class, seek redress for Defendant's violation of Section 1 of the Sherman Anti-Trust Act.

47. Defendant improperly ties and bundles its premium and/or digital cable service with the necessary rental of a set-top cable box. Specifically and as explained above, Defendant contracted with the Class to provide cable services but only on the condition that the Class also rent a set-top cable box from Defendant.

48. As a result, the Class cannot unbundle the tied products (the premium and/or digital cable service and the cable box).

49. Instead, the Class is forced to pay rental fees for the cable box, in addition to fees for cable service. Defendant's conduct is particularly acute and egregious, given it is one of the largest cable service providers in Michigan and the entire United States.

50. Defendant has, at all times relevant to this action, maintained sufficient economic power in the cable market to coerce Plaintiffs and the Class to lease and/or accept the tied product.

51. Defendant's improper tying and bundling harms competition. Upon information and belief, just two manufacturers of cable boxes dominate the industry and they provide most of their products to Defendant and a small group of other cable service providers. Since the Class can only lease cable boxes directly from Defendant, there is little motivation for other manufacturers to enter the market, and those that do are foreclosed from renting and/or selling cable boxes directly to members of the Class at a lower, market-driven, cost.

52. There is a market for cable boxes that is separate and apart from the market for Defendant's cable services. The cable services and the set-top box are distinct and separate items.

53. Defendant has, at all times relevant to this action, maintained sufficient economic power in the cable market to coerce Plaintiff Class to lease and/or otherwise accept the set-top box that they would not otherwise lease or accept from Defendant. This economic power will continue absent the relief sought herein.

54. Defendant's conduct at issue involves a substantial amount of interstate commerce in the market for set-top cable boxes and related markets.

55. Defendant's tying and bundling of its cable service and cable boxes constitutes an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1.

56. Defendant's tying and bundling activities have an adverse impact upon cable consumers and competition.

57. There is no lawful business justification for Comcast's actions.

58. As a direct and proximate result of the aforesaid acts and activities of Defendant, Plaintiffs, and each of them, have been caused to sustain damage by virtue of amounts paid pursuant to the unlawful tying arrangement of premium and/or digital cable services and the set-top cable box.

59. All of the acts and activities of Defendant, as heretofore set out, were performed intentionally, fraudulently, maliciously, knowingly, and conspiratorially.

## COUNT II

### Class Action By All Plaintiffs Against Defendant For Violations Of The Michigan Consumer Protection Act.

60. Plaintiffs re-allege and incorporate herein by reference as though fully set forth herein each and every allegation in all preceding paragraphs.

61. Plaintiff Class alleges that Defendant committed the unfair, deceptive and unlawful practices as explained, discussed, and set forth in detail above.

62. Defendant's actions, as described in detail above, have a capacity, tendency, and/or likelihood to deceive or confuse members of the Class.

63. Defendant has committed unlawful business practices in connection with providing cable services to Plaintiff Class and the general public.

64. Defendant's actions, as discussed above, have a capacity, tendency or likelihood to deceive or confuse members of the Class regarding its cable services.

65. The unlawful, unfair and illegal acts and practices of Defendant, as explained and discussed above, present a threat to members of the Class in that Defendant is able to carry on its unlawful scheme without suffering the consequences of legal action and violations of law.

66. Plaintiff Class is informed and believes and thereon alleges that Defendant continues these unlawful, unfair, and/or fraudulent business practices alleged herein.

67. Defendant's actions constitute an unlawful, unfair or fraudulent business practice within the meaning of the Michigan Consumer Protection Act, MCL §445.901, *et seq.*).  Plaintiffs and members of the Class and the general public were, and are likely to be deceived by Defendant's actions discussed above.

68. As a direct and proximate result of the aforesaid acts and activities of Defendant, Plaintiffs, and each of them, have been caused to sustain damage by virtue of amounts paid as a result of Defendant's deceptive and/or unfair acts or practices.

69. All of the acts and activities of Defendant, as heretofore set out, were performed intentionally, fraudulently, maliciously, knowingly, and conspiratorially.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows;

a. For an order certifying the Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiffs as representatives of the Class, and appointing the law firm of Macuga, Liddle & Dubin, P.C. as counsel for the Class;

b. For an order that Defendant has violated the Sherman Anti-Trust Act;

c. For an order that Defendant has violated the Michigan Consumer Protection Act.

d. For all recoverable compensatory and other damages sustained by Plaintiffs and the Class;

e. For injunctive relief prohibiting the future tying of cable services by Defendant.

f. For all statutory damages available under the claims asserted;

g. For payment of costs of suit herein incurred;

h. For both pre-judgment and post-judgment interest on any amounts awarded;

i. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

j. For such other and further relief as the Court may deem proper.

Dated: February 9, 2010                              Respectfully submitted,

**MACUGA & LIDDLE, P.C.**

/s/ PETER M. MACUGA, II
Peter W. Macuga, II
Attorney for Plaintiffs
975 E. Jefferson Avenue
Detroit, MI 48207-3101
(313) 392-0015

## **DEMAND FOR TRIAL BY JURY**

    NOW COME the Plaintiffs, by and through the undersigned counsel and hereby demands a trial by jury of the within cause of action.

/s/ PETER M. MACUGA, II
MACUGA & LIDDLE, P.C.
Peter W. Macuga, II (P28114)
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
(313) 392-0015

Dated: February 9, 2010